## Novak *v.* State Workmen's Insurance Fund et al., Appellants.

Argued April 16, 1934.

Before Trexler, P. J., Keller, Stadtfeld, Parker and James, JJ.

*Ralph H. Behney,* and with him *Wm. A. Schnader,* Attorney General, and *A. L. Edwards,* Deputy Attorney General, for appellants.

*H. S. Dumbauld,* for appellee.

OPINION BY PARKER, J., July 13, 1934:

This is an appeal from the affirmance of an award by the workmen's compensation board for industrial loss of the use of an eye. The claimant, a coal loader employed by Hustead Semans Coal & Coke Company, was injured in the course of his employment by a foreign body striking his left eye. Compensation was paid to him for total disability until May 21, 1929, when he executed a final receipt and returned to his former employment. Subsequently he filed a petition for review, claiming the loss of vision of his left eye ''for all practical, industrial purposes'' as a result of the original accident. The board, reversing the referee, found as facts: ''On February 12, 1929, while digging down slate in the employ of the defendant, a piece of slate struck the claimant in the left eye, causing a large infected corneal ulcer to develop, with pus in the anterior chamber which healed, leaving a corneal scar occupying the pupilary area of the cornea; all of which has caused him to permanently lose the industrial sight of the eye.'' It then awarded compensation under Section 306 (c) of the compensation law for loss of an eye.

The result of this appeal depends upon the sufficiency of the evidence to support the findings of fact. It is provided by Section 306 (c) (77 PS 513) as follows: "For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: ...... For the loss of an eye, sixty-five per centum of wages during one hundred and twenty-five weeks ...... Permanent loss of the use of a hand, arm, foot, leg, eye, finger or thumb, shall be considered as the equivalent of the loss of such hand, arm, foot, leg, eye, finger or thumb." "The expressions 'loss' and 'loss of the use' as used in Section 306 (c) should be given their unrestricted and ordinary use; and the claimant's eye or the use of it, is not lost unless it is useless in any employment for which claimant is physically and mentally fitted": Massett v. Amerford Coal M. Co., 82 Pa. Superior Ct. 579, 583. Also, see Chovic v. Pgh. C. S. Co., 71 Pa. Superior Ct. 350, 353.

The claimant does not contend that he has lost his eye or the use of it. The strength of vision in one eye has been impaired to a degree only. The lone expert called was Dr. Blair, a witness for the claimant, who testified that in the right eye claimant had normal vision and that the left eye with vision corrected was "20 over 70." This expression, "20 over 70," is a technical one used in ophthalmology. It is not a percentage but, being interpreted, means that with the eye being measured one can read the letters on the 70 line of the standard Snellen Type Chart at a distance of twenty feet. The standard tables found in various accepted publications describe 20 over 70 as sixty-four per cent of normal vision. Dr. Blair, on the subject of disability, testified: "The vision of 20 over 70 I believe is not considered working eye. That is, if he would lose his good eye, I doubt for certain work whether he could use it. It wouldn't be

coal mining or work around the coal mine. Q. Wouldn't be industrial work? Such as work on the railroad or pipe line or buildings? A. I doubt if he would be able to work at any of these things. Q. Then, it is your professional opinion that the left eye is lost for industrial purposes? A. I would say so." Such testimony standing alone will not support a finding by the board that the claimant has lost the industrial use of an eye. The expert predicated his conclusion upon the loss of sight in the right eye which is contrary to the existing fact that he now has normal vision in the right eye. While it is true that the claimant testified that he was unable to secure employment from several persons to whom he had applied on account of the condition of his vision, yet viewing all the evidence in a light most favorable to claimant it comes far short of establishing the fact that the eye is useless in any employment for which he is physically and mentally fitted. It is idle to suggest that one having normal vision in one eye and sixty-four per cent of normal vision in the other eye is prevented from finding employment in work to which he is fitted. This case is ruled by Massett v. Amerford Coal M. Co., supra; Fillip v. Wm. Cramp & Sons, etc., 80 Pa. Superior Ct. 68; Quinn v. Amer. I. Ship Bldg. Corp., 77 Pa. Superior Ct. 304.

Because the claimant has not lost permanently the industrial use of his eye, it does not follow that he may not be entitled to compensation under Section 306 (b) for loss of earning power due to the injury to his eye. "Claimant sustained an impairment of vision, compensable by clause b if there was resulting loss of earning power, and by clause c, if he lost the use of his eye": Fillip v. Wm. Cramp & Sons, etc., supra, p. 71. The case must, therefore, in the interest of justice be remitted to the court below for the purpose of sending the record to the board that the claimant

may have an opportunity to establish, if possible, loss of earning power on account of partial disability.

The judgment is reversed and the record is remitted with directions to recommit the record to the workmen's compensation board for further hearing and determination in accordance with this opinion.