Shannon *v*. Turissini (et al., Appellant).

Argued June 9, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*David B. Skillman,* for appellant.

*John T. Riley,* with him *William J. P. Collins,* and *Brennen & Riley,* for appellee.

OPINION BY WOODSIDE, J., September 16, 1959:

This is an appeal from a decision of the Court of Common Pleas of Northampton County affirming an order of the Workmen's Compensation Board awarding compensation to the claimant Charles E. Shannon for the loss of an eye. See Section 306(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §513.

On December 28, 1956, the claimant sustained an injury to his left eye when it was struck by a rope he was using to start the motor of a gas engine. The eye was so badly injured that it had to be enucleated.

Prior to the accident, when the claimant was 13 years of age, he had suffered an injury to the same eye, producing a traumatic cataract which was removed. The claimant testified that since the removal of the cataract "I could still see light, and with a glass after

my cataract was removed I could read the chart . . . but I couldn't use glasses because I see double, . . ."

The courts of this Commonwealth have decided a number of cases dealing with the effect of a traumatic cataract removal under section 306(c) of the act.

The evidence in virtually all of these cases has been similar, and it is safe to assume that there is no substantial distinction in the physical conditions of the claimants, although the different language used by claimants in describing their injuries has led the courts in some cases to attempt to distinguish physical conditions which are in fact basically the same.

After certain eye injuries, a cataract develops causing the lens of the eye to cloud or thicken. Thereafter, the lens can be, and ordinarily is, partially removed. There remains a portion of the lens which can itself thicken causing a variation in the visibility of patients.

Depending largely upon the degree to which the remaining portion of the lens thickens, the vision in the injured eye can be increased with the use of lenses to near perfect vision in many cases and to 20/70 or better, in most cases. Without a corrective lens, however, the visibility from an eye from which a traumatic cataract has been removed is ordinarily mere light perception, enabling the person to see hand and finger movements a short distance from the eye, or to see the outlines of large objects with the eye. The value of the injured eye depends not only upon the amount of vision which remains after the injury, but also upon the injured eye's ability to coordinate with the other eye. Until recently, correction of the injured eye was considered impracticable because even with correction the injured eye would not coordinate with the uninjured eye, resulting in double vision.[1] For this reason the

---

[1] Recently the use of contact lenses and the insertion of a plastic lens within the injured eye have been used in an effort to

condition of an eye from which a traumatic cataract had been removed has been that of an "eye in reserve", one which can be used in the event of an injury to the other.

Whether an eye injury requires enucleation or whether it requires a cataract removal, the resultant visual impairment is similar in that the field of vision is narrowed and binocular vision is terminated resulting in loss of depth perception.

Unlike an enucleation, however, an eye from which a traumatic cataract has been removed can be corrected should the vision in the other eye be lost, and without correction there remains the ability to see a blurred outline of large objects with the injured eye. These are valuable qualities and render a cataract removal preferable to enucleation.

These conditions have created a difficult problem under section 306(c) of the Workmen's Compensation Act, supra.

The courts have been faced with the problem of whether a person who has lost binocular vision by cataract removal has suffered the loss of an eye under the act, and further, whether a person who has had enucleated an eye from which a traumatic cataract had previously been removed has suffered the loss of an eye under the act.

In *Quinn v. American International Shipbuilding Corp.*, 77 Pa. Superior Ct. 304 (1921) an eye enucleation case in which the claimant had previously only light perception, this Court affirmed a denial of com-

correct the vision and coordinate it with the other eye. This has been of limited success. In cases in which it would be successful it would appear that a claimant would not be entitled to compensation for the loss of an eye because of a traumatic cataract, and would be entitled to compensation for a subsequent enucleation of an eye from which a traumatic cataract had been removed.

pensation under section 306(c). Thereafter, in *Massett v. Armerford Coal Mining Co.*, 82 Pa. Superior Ct. 579 (1924) this Court reversed an award of compensation under section 306(c) for the removal of a cataract. The *Quinn* and *Massett* cases were followed in Pennsylvania for a number of years. See *Leed v. State Workmen's Insurance Fund*, 128 Pa. Superior Ct. 572, 194 A. 689 (1937); *Ward v. Bucyrus-Erie Co.*, 131 Pa. Superior Ct. 18, 199 A. 362 (1938); *Schultz v. Dougherty Refining Co.*, 130 Pa. Superior Ct. 607, 198 A. 895 (1938).

In 1937 the legislature amended section 306(c) of the Workmen's Compensation Act to provide compensation for the loss of "the industrial use" of the eye. The previous test had been whether the eye had been lost for all intents and purposes. In the cases under "the industrial use" amendment, the court arrived at the same result in the cataract removal cases as it had in the previous cases.

In 1939 the industrial use test was abandoned by the legislature, and the test again became whether the eye was lost for all practical intents and purposes.

In *Reigle v. Sholly*, 140 Pa. Superior Ct. 153, 14 A. 2d 166 (1940) this Court, citing the *Massett* case, affirmed an award under section 306(c) for the enucleation of an eye from which a cataract had previously been removed. Four years later in *Diaz v. Jones & Laughlin Steel Co.*, 155 Pa. Superior Ct. 177, 184, 38 A. 2d 387 (1944) this Court distinguished the *Quinn* case and declared the standard in an enucleation case was "whether *using both eyes* he had better general vision than he would have had with only the right eye." See also *Diaz v. Jones & Laughlin Steel Co.*, 170 Pa. Superior Ct. 608, 88 A. 2d 801 (1952).

In 1945 in *Wildman v. Penna. Department of Highways*, 157 Pa. Superior Ct. 301, 43 A. 2d 342, this

Court followed the *Diaz* case and affirmed the award of compensation for the enucleation of an eye from which a cataract had been removed.

In 1948 this Court for the first time held that a claimant was entitled to compensation under section 306(c) for the removal of a traumatic cataract. *Criner v. McKee Glass Co.,* 162 Pa. Superior Ct. 627, 60 A. 2d 595 (1948). This case was subsequently followed in *Stachowski v. Incorporated Real Estate Investors,* 174 Pa. Superior Ct. 152, 100 A. 2d 140 (1953) and *Oliver v. Westinghouse Electric Corporation,* 186 Pa. Superior Ct. 604, 142 A. 2d 486 (1958).

It is apparent, from a review of the cases cited above, that the *Massett* case and the cases relying thereon have been overruled, and that the *Quinn* case has been limited to its facts. The present status of the law, therefore, is that a claimant who has had a traumatic cataract removal which cannot be corrected to produce binocular vision, is entitled to compensation under section 306(c) of the Workmen's Compensation Act, supra. *Criner v. McKee Glass Co.,* supra.

It is equally well established under the *Diaz* cases, supra, that the loss of an eye from which a traumatic cataract had previously been removed may be compensated under section 306(c) of the act. In either instance the claimant has lost a valuable physical asset.

If the cases allowing recovery under both circumstances do not meet the test of consistency, at least they have followed the rule that the Workmen's Compensation Law is a remedial statute and is to receive a liberal construction.

It should be noted, however, that where a claimant has recovered compensation under section 306(c) for a traumatic cataract removal, he may not again receive compensation under section 306(c) for the enucleation of the same eye. *Brown v. State Workmen's Insurance*

*Fund,* 131 Pa. Superior Ct. 226, 228, 200 A. 174 (1938) ; *Diaz v. Jones Laughlin Steel Co.,* supra, 155 Pa. Superior Ct. 177, 180, 38 A. 2d 387 (1944).

Decision affirmed.